argument is Jones v. Martinez. Could someone close the door, please? We're ready to hear from the appellant. May it please the court. The Fourth Amendment allows police officers who have a reasonable suspicion that a suspect is engaging in illegal activity to temporarily detain that individual for investigation. Reasonable suspicion is a very low standard. It only requires some minimal level of justification that is not based solely on a hunch or gut feeling. The doctrine deals with suspicions, not certainties. Reasonable suspicion may exist even if it is more likely than not that a suspect is not engaging in criminal activity. The sometimes innocent people are going to be stopped. That there may be innocent reasons for a suspect's conduct does not mean there's no reasonable suspicion and it does not mean there is a Fourth Amendment violation when officers approach that individual to investigate. Because the defendants have inserted the qualified immunity defense, this court must decide the legal question of whether, considering the facts of this case, plaintiff has overcome his burden of establishing that the officer's conduct violated the Fourth Amendment and whether the constitutional violation was clearly established at the time. Mr. Jones has not carried his burden and the district court erroneously concluded that he had. Where do we look for the undisputed facts that will give us a That is complicated in this case by the nature of the written order by the district court judge. There was no specific section that these are the undisputed facts that we are considering. Under these circumstances, the court may look behind the judge's order to find the facts that determine the totality of the circumstances, which is essential for a Fourth Amendment inquiry, and district court adopted some facts that were found by the magistrate judge in a motion to dismiss, and to the extent that those facts relied on untested allegations in the complaint, those facts are improper. The district court made some specific findings and the district court discussed some things, but didn't really specify whether or not she was making those factual findings or not. Could we could we could we imply that when she said the defendant alleges this and or the plaintiff, I'm sorry, the plaintiff alleges this and then she makes some findings, can we imply that those were factual findings that she was essentially saying when the plaintiff alleges something, I'm finding that, looking at it in a light most favorable to the plaintiff? Could we imply that because there's a lot of that in this district court order? Correct, Your Honor, there is a lot of that in this order and I think under certain circumstances depending on how she phrases those factual findings, it might be a it is or not. Well, what do you think are the undisputed material facts here? That of the early warning hours of April 26, 2016, Mr. Jones was seated behind the wheel of a parked car in a spot reserved for a business in the parking garage of an apartment building posted with no trespassing signs, and which was known for trespass offenses. The manager of that apartment building had specifically requested the Denver Police Department to provide extra patrols and enforce the Officer saw Mr. Jones parked where he was, ran the license plate, and discovered that the car was not registered to that address, but to an address in Aurora, and that the municipal ordinance in question creates rebuttable presumption that an individual located in the area posted with no trespassing signs does not have permission to be there. Those are the operative material facts and one under which the officers determined that there was in fact reasonable suspicion to investigate. Does the plaintiff dispute any of those facts? Those are undisputed facts, Your Honor. Is there any dispute about when Mr. Jones told Officer Monriquez that he was waiting for a friend or somebody? It's phrased both ways. The district court made no specific finding as to the timing of that discovery exactly when that statement was made to the officers by Mr. Jones. There is no dispute that he did in fact make that statement to the officers sometime during the encounter. What impact would that statement have had upon reasonable suspicion if the officers, let's say the officers didn't have reasonable suspicion up to that point, would that have, are you indicating that he was somehow authorized or is that? No, Your Honor. They didn't have reasonable, I guess I'm getting it twisted up, but do you see what I'm saying? What impact is that? Because this is all about the lack of consent to be there essentially, or did he have authorization to be parked in that space? That's the element that's missing as the officers approach. What, when he says to them, I'm waiting on a friend or I'm waiting on somebody, whichever it was, what does that mean in your view towards reasonable suspicion? As Your Honor just wrote in Bailey v. Toomey, that the officers have no obligation to accept a suspect's innocent explanation or of innocent conduct. That doesn't mean it's not, I didn't, I don't think that means it's not relevant, however. Correct, Your Honor, but they are allowed to continue their investigation until they resolve the ambiguities about whether Mr. Jones has permission to be there, and his statement that he's waiting for a friend does not end their reasonable suspicion. They are allowed to continue their investigation, and under these circumstances, their investigation was stymied by Mr. Jones's conduct. They were never allowed to complete their investigation, and thus Mr. Jones was eventually charged with interference, but his statement in and of itself that he's waiting for a friend doesn't vitiate reasonable suspicion for trespass. Where did the district court err in its analysis here? There are several ways the district court erred in her analysis. One of the main ways, according to the defendants, is that she undertook a divide-and-conquer approach to the totality of the circumstances, and the divide-and-conquer approach, which is analyzing every element separately, is specifically forbidden by the Supreme Court. In the case of Ms. Westby, they just overturned an appellate court for doing that exact same thing. That individual factors may point to innocent conduct does not mean that in the totality of the circumstances that the officers did not have reasonable suspicion. Under the totality of these circumstances, the officers did indeed have reasonable suspicion, and when the judge is going through the individual factors rather than the totality of the circumstances, they may point to some of those factors. For instance, if the officers did not know for certain that Mr. Jones did not have permission to be in the parking garage, officers did not need to know anything for certain before they approached for a reasonable investigation based on reasonable suspicion. It is suspicions, not certainty. Also, the operative municipal ordinance says that doesn't matter, that if they're in a location that is marked no trespassing, the rebuttable presumption is they don't have permission to be there. Furthermore, when the district court determined that Mr. Jones's car being registered in Aurora does not in and of itself create reasonable suspicion, no one's arguing that on the defendant's side. It's totality of the circumstances. You have to consider that factor with everything else involved in this encounter. And third, that Mr. Jones is waiting for a friend. I just talked about that with Judge Moritz. That cannot officiate reasonable suspicion under these circumstances. So this parking garage, it was, for lack of a better term, like a multi-purpose garage, right? I mean it served commercial clients and there were also residential people who had a right to use it. Correct. Is that fair? Yes. Don't you think under that circumstance there's some limited license for the public to enter that garage if they have business in the building or if they have someone they're visiting in the building? Correct, Your Honor. And that Mr. Jones may have had that instant reason for being there, but the Supreme Court allows officers to approach to resolve any such ambiguity and that based on reasonable suspicion. What if he did, what if they would have been sitting outside and watched him pull in and said we're gonna follow him in and immediately question him about why he's here. Is that okay? If that are the only circumstances you have, Your Honor, I think under the the rebuttable presumption given by the ordinance they would have permission to ask him that question. Under those circumstances that may have been a consensual encounter and not a Fourth Amendment reasonable suspicion. Stop. Let me change it on you. What if he's in there and he's driving out and the police say I wonder if he had permission to be in there and they block him and go up to his car and say excuse me sir do you have permission to be here and what transpires happens then? That's a much closer call I admit but those are not the facts of this case. Well it's real close to this one where they only had a very short period of time observing him in the garage. But during that time they ran his license plate and knew he was not registered to that building. They had that additional factor and the rebuttable presumption provided by the statute, Your Honor, and reasonable suspicion is an extremely low standard and under the circumstances they had a minimal level of objective justification to approach him and question him. What's the difference between this parking lot and any any other parking lot in a high-crime area? This one was specifically posted no trespassing. So as long as we've got a parking lot posted no trespassing in a high-crime area they pretty much can question anyone and it's not just it's not just questioning it's not just voluntary it's reasonable suspicion. Your Honor, under the facts of this case that's not all they had. They had the knowledge that he did not belong there. His car did not belong there. They don't know he doesn't belong there just based on where his tags are registered. There's ambiguity of whether he's allowed there or not and the reasonable suspicion doctrine allows officers to resolve the ambiguity. And if there are no more questions I would like to save the remaining of my time for rebuttal. Thank you. Thank you. May it please the court. I'm Reid Allison on behalf of Plaintiff Appellee Dion Jones who is with us in the courtroom today. Every other attorney and judge who has viewed these facts properly has concluded that the officers lacked reasonable suspicion when they detained Mr. Jones. For example the Denver City attorney in refusing to prosecute Mr. Jones and this is at appendix page 89 concluded that there was insufficient articulous suspicion of a criminal offense during the first encounter and therefore there was no legal basis for the officers to seize, detain, or search the suspect. We've been told that reasonable suspicion is a very low standard. We agree with that. It has to be some standard. There has to be something. Judge Morris as you pointed out there's no distinction between this parking garage and any number of parking garages. A lot of parking garages especially in places that have businesses as well as apartments connected to them have no trespassing signs. If that means someone is parked in a parking garage like that and I suppose also that they're not from around here is the idea then not only can we go question them because of question a citizen a person on the street about anything they'd like that's called a consensual encounter. The trouble here is they immediately detained Mr. Jones. They ordered him to stay. He was not free to leave. They ordered him out of his car. Well all that evolved after the conversation and he I guess you could say he was not obeying their commands or at least they thought he was not. I mean I think we need to continue our focus on the initial encounter and whether they could do that and we have more here. We have 1.30 in the morning right and we have the landlord of the building has encouraged or directed perhaps police to survey this area and these particular officers were told to do that when they started their shift to go to this parking lot check it out. Is that part of our picture here? Yes that is. And that adds to the high crime because the landlord said they'd had trouble in that area is that right? Yes. So the officers had all of that and that's still not reasonable suspicion to stop and question the driver of the car? No your honor virtually none of that has anything to do with Mr. Jones. He was present parked in a parking lot. Right. Those were facts about that time and that place in that area. We were told that the officers did not have reason to know for a certainty whether or not he had permission to be there. It's more than that they really had no idea either way. Isn't that what isn't that what officers do all the time is they investigate? They don't know the full facts before they start asking questions. Again the distinction between a consensual encounter and them ordering someone to answer their questions them ordering someone to get out of their car such that refusal to do so was then itself a crime. That's the really important distinction here and for with him they had none of that. He told them he was waiting for a friend. Right so they were to accept that? That would put the end to a lot of criminal investigations. Your officers are your I'm good here. Yes your honor of course that would. The cases that they cite and we agree that officers are not required to blindly accept a suspect's explanation for what it is they are doing or not doing. All of those cases had innumerable extra facts and evidence that made pretty clear at the time that the person spoke that what they were saying about what they were doing wasn't true. Wesby for example the woman was at a house there was a big house party going on. She said oh yeah I invited all these people here like this is my house. The cops look around it was basically vacant there was nothing in it. She was nervous and evasive that entire time. They had a couple of other reasons that slipped my mind now that made it pretty clear that she was not being truthful in that moment. Well this points me to the clearly established prong. Even if you know we might agree with you it's a close question clearly about the reasonable suspicion and whether there was a violation here how is it that the district court didn't err on the clearly established prong? She looked at it from a very high level of generality. She said the law is clearly established that people can't be detained against their will when officers lack reasonable suspicion. We've got to look at it from a far less general level. What cases can you point to that would indicate that these officers were on notice in this case that they lacked reasonable suspicion? Your Honor I think with respect to his presence and what has been deemed a high crime area I think that's been clearly established for decades that presence in a high crime area is not enough reasonable suspicion. That's Brown vs. Texas 443 U.S. 47. It's also Illinois v. Wardlow. Again we're looking at the totality of the circumstances here. What cases would indicate that under the totality of the circumstances they should have been on notice? Your Honor if you're looking for a case that says 130 in the morning no trespassing signs. I'm not looking for that case but I'm looking for something similar according to the Supreme Court I've got to do that. Your Honor I think the Supreme Court in all those cases has also said that there are cases in which general principles of Fourth Amendment law can apply with obvious clarity. I think I don't think this this discussion seems to indicate to me it's not obvious not obvious at all. I believe that the Denver City Attorney's decision to refuse to because the officers clearly lacked reasonable suspicion is important on a couple of levels. One I think it's a common-sense analysis of the facts by someone who does it every day. It's an expert in the field. The city attorney looks through these fact patterns all the time knows the law backwards. Can you point us to any law that indicates that subsequent decision whether to prosecute or not has any impact on the clearly established analysis? That's a later decision we're looking at it from the point of view of the officers at the moment that they decide to approach. Well Your Honor I think it's also important for purposes of supporting the obviousness angle. A case like this a case that has this tiny amount of suspicion virtually no suspicion at all doesn't get to a court. We've cited in our briefs cases from around the country that say the most obvious cases are not litigated specifically in the criminal procedure realm. A case like this doesn't even make it past the first hurdle. You never get to a judge on a motion to suppress. You've seen in both of our briefs a lot of our cases are United States versus their motion to suppress cases. We didn't even get there here because a prosecutor whose job it is to prosecute these cases and know what will or will not fly. Well I have to tell you from our point of view almost every 1983 case involving Fourth Amendment usually comes to us after a decision not to prosecute or a dismissal of charges. So I think if we just say that's enough we're done we we'd have decisions quite readily resolved in these cases but that's not how it works. I mean it's possibly something we could look at but that isn't the end-all and be-all. No I understand that Your Honor and this is not I'm not citing to it because of the pretty specific and explicit reasoning that they gave for it which I don't think is a post hoc thing. I think it's when it's that level it's so it strikes me as so obvious. So I judge Moritz I don't believe that I have a parking garage no trespassing 130 in the morning. Well I'm not asking that I'm asking what's something similar and I think the only case you pointed to in the briefing was Dell. First of all that's an unpublished case so that's can't really clearly establish the law but in that case seemed to me to be factually not analogous at all. Yeah that that case is I think helpful to us mostly for its reasoning. Basically what Mr. Jones did was purely innocent conduct. He was parked in a parking garage waiting for a friend. He told them that. They had no reason whatsoever to disbelieve him based on the surrounding circumstances. He was in fact waiting for a friend. There is plenty of record evidence of that. So they're not. And when you say he was in fact waiting for a friend we don't have what what do you mean other than his own testimony that's what you're referring to? Is there something else that did a friend appear or there's nothing like that I mean what else do we have about him waiting for a friend? I don't know. At the time what did the officers have is what I'm asking. What were the what did they have to dispel their suspicions? I don't know that they had anything your honor. I think his statement his statement that he was waiting for a friend but you indicated there was something else and I thought maybe there was. Oh not for the officers at the time. Okay. My point about them disbelieving what people say is that all of those cases are based on extra facts. I believe the Bailey case that you recently wrote if I recall correctly that's a case in which a woman touched and or hit an officer and then said something like oh well actually what I meant to do was this this this and she said well and I shouldn't have been arrested because my explanation that was what happened right but the officer felt being touched and or hit so does not need to take her word for well I didn't mean it somehow. That's not this case. They have no reason to believe that when they approach him that he's not waiting for a friend and then he tells them that he is. Once they don't have reasonable suspicion it's very well established that all of the orders that they give him and they basically immediately start to give him orders. He has the car. He's sitting there with his ID in his hands. He's ready to give his ID over. They can see into his car. They can talk with him. They are talking with him. He says you need my ID. They're like give me ID. You can get out of the car now. Get out of the car. He questions it for about 20 seconds. Then Officer Black opens his door. Mr. Jones begins to voluntarily leave his car with his ID still in his hand. As he's getting out of the car he either moves to put his ID back in his and coming out of the car at which point Officer Black screams at him, pulls his gun on him, and Mr. Jones, terrified, closes the door behind him. He was constitutionally entitled because the officers did not have legal authority to detain him to disregard the orders that the officers gave him. That could not be more clearly established for decades and decades worth of Supreme Court proceedings. So what is the probable cause? To arrest him because he is exercising his constitutional right to disregard their unlawful orders. Once they do arrest him, they also have no legal grounds to search his person or to search his car. All of the cases that authorize such searches are based on, at the very least, a legitimate detention. So the protective sweep of a car has to have at least, at its foundation, you have to have been lawfully detaining them in the first place. This protective sweep of the car occurred after the arrest, right? He was handcuffed on the seat, right? Wasn't he arrested already and handcuffed? Yes. That's Arizona v. Gant. For Gant purposes... I guess my question is, if we disagreed with you and we found there was reasonable suspicion, do you have an argument to be made on any of the other issues, specifically the car, that the car search was still improper? Well, under Gant, the car search... You didn't really make a separate argument. I think you tied them all together, relied on the lack of reasonable suspicion. But I'm just saying, if we disagree with you, do you lose on everything else, too? I think your point about Gant is correct, that there is an argument still there. Gant says, if the person is out of the way and can't access the place you're going to protective sweep, then you can't do it. Gant is also about looking for evidence of the crime of arrest. So give us the factual surroundings of the search of the vehicle, as you recall them. What happened? After Mr. Jones was arrested, I believe he's handcuffed. I'm not sure whether he's in the back of the squad car already or if he's just... But he's removed from his vehicle and he's handcuffed? Yes. He's both of those things. Officer Manriquez, who had been on the passenger side the entire time, then opens the passenger side door and scans. Just looks or physically searches with his hands? I believe he only looked, but I'm not entirely sure about that, Your Honor. Okay. But so, yes, if there is reasonable suspicion, then things cascade not in our favor. I'm perfectly happy to concede that. Although there does remain a huge Gant issue here. There's no evidence of a crime for them to look for. He doesn't have access. So are you conceding or are you not? I am not conceding. I'm sorry. Okay. If you decide that there is... If there's no reasonable suspicion... Okay. All right. Yes. Do you have a case where there's a quasi-public garage? I'm sure your opposing counsel is not going to agree with that terminology, but a garage that's meant to serve... that's private but meant to serve members of the public who have business in it. Do you have any cases about trespass in those garages? I don't believe so, Your Honor. Okay. If there are no further questions, for the reasons stated in the district court's opinion, for the reasons perfectly summed up by the prosecuting attorney, not just in refusing to prosecute, but in explaining why there could be no prosecution, this court should affirm. Thank you. Your Honors, I would like to address the vehicle search. There is a question whether, under these circumstances, Arizona v. Gantt or Michigan v. Long applies. I assert that it's Michigan v. Long because the officers had a reasonable suspicion that he was dangerous. They thought, you can watch the video, that he was... Well, he's handcuffed by the time they do the search. He was handcuffed, Your Honor. Does that change anything? The interplay between Michigan v. Long and Arizona v. Gantt is unclear, and this circuit has never decided that interplay. Under those circumstances, I think we went on clearly established. However, the Michigan v. Long court said that the time period under which the officers can search, if they reasonably believe that the suspect is a danger, he can be in a squad car. In Michigan v. Long, he was in the back of a squad car, and they still legally did the protected sweep of the vehicle. I think this is clearly within Michigan v. Long authority. Do we consider the vehicle, what happens to the vehicle after you take the driver into custody, and we have the vehicle then basically abandoned in a public garage? Should the officers look? I mean, counsel was saying they looked. I don't know if they physically... Is that all they did was they looked, or did they physically use their hands in search? You know, Officer Manriquez peered into the front passenger compartment of the vehicle. He did not move anything. He did not go under the seats. He was looking for the gun that they thought was going to be present. True, they were going to arrest Mr. Jones and take him out of the garage, and that car was going to stay there at least temporarily. They did ultimately tow it and seize the car. But under those circumstances, they could not leave, if Honor is correct, a car with a weapon in it for anything to happen to it after they left. The clearly established element, even if you find that there was not reasonable suspicion, we went on clearly established. There are no cases, even close to these circumstances, that would tell the officers or put beyond debate that their conduct in relation to Mr. Jones violated the Fourth Amendment. There simply is not anything close. Mr. Jones is completely felled to the carrier's burden in that regard. And unless there are any other questions, I'm going to sit down. Thank you. Thank you. Thank you both. Well-argued case.